NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| TAMEKO WATSON : | |
| : | **Hon. Dennis M. Cavanaugh** |
| Petitioner, : | |
| : | **OPINION** |
| v. : | |
| : | Civil Action No. 04-3939 (DMC) |
| UNITED STATES OF AMERICA, : | Criminal No. 01-570 (DMC) |
| : | |
| Respondent. : | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court on a petition for writ of habeas corpus relief by Petitioner Tameko Watson ("Petitioner"), pursuant to 28 U.S.C. § 2255, to vacate, set aside or otherwise correct her sentence. This petition is decided without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, Petitioner's request is **denied** and the petition for writ of habeas corpus relief is **dismissed**.

I. BACKGROUND

On or about September 7, 2001, Petitioner was indicted on eleven counts relating to acts concerning falsifying facts made to buyers of mortgage loans, mail fraud, and monetary transactions of criminally-derived property. (Respondent's Answer ("Ans.") at 2). Petitioner alleges that, following her arrest, she was coerced into confessing that she "witnessed Chris Woods make fraudulent mortgage documents" which were then given to her to submit to various banks. (Petitioner's Brief in Support of her §2255 Motion ("Pet. Br.") at Attach. 1). She claims that she was compelled to lie and incriminate herself in order to avoid severe penal consequences

with which she was threatened. (Id.)

On or about February 20, 2003, Petitioner pled guilty, pursuant to a plea agreement (the "Agreement"), to every count of the indictment. (Ans. at 3). At the plea hearing, Petitioner admitted to falsifying entries on various loan applications regarding borrowers' employment and income, creating the appearance of a down payment by the borrowers, creating the appearance that borrowers had been rent-paying tenants, creating or obtaining falsified I.R.S. tax returns for borrowers, creating the appearance that borrowers had received money toward the down payment as a gift from a relative, submitting the falsified loans to the Housing and Urban Development ("HUD") home ownership center, depositing illegally obtained property into a bank account, and other related offenses. (Ans. Ex. D at 24-28). Petitioner testified that she read, understood and voluntarily signed the Agreement. (Ans. Ex. C at 14-15). At the June 24, 2004 sentencing, the Court imposed a sentence of fifteen months incarceration for each count to run concurrently, three years of supervised release, and restitution in the amount of $389,880.58. (Ans. at 3). On or about July 6, 2004, Petitioner filed a habeas petition before the Court contending that her plea was made involuntarily, she was denied effective assistance of counsel, and her conviction was obtained by the use of a coerced confession. (Pet. Br. at 1, 4-5).

## II. DISCUSSION

### A. Jurisdiction for a Writ of Habeas Corpus Absent Present Incarceration

The Court notes that, although in custody at the time the petition was filed, Petitioner subsequently has been released. Jurisdiction for a writ of habeas corpus may exist even absent physical custody of the Petitioner. Jones v. Cunningham, 371 U.S. 236, 244 (1963). A petitioner's release from incarceration does not render his petition moot. Barone v. Brown, 126

F.Supp. 2d 805, 809 (2001).   When a habeas petition is filed when the petitioner is in custody, he retains standing even after release, due to the collateral consequences of his conviction, such as deprivation of the right to vote or the imposition of financial restitution.  Spencer v. Kemna, 523 U.S. 1, 7, (1998); see Pringle v. Court of C.P., 744 F.2d 297, 301 (3d Cir. 1984); see also Barone, 126 F. Supp. 2d at 808-809.

**B.  Petitioner Fails to Demonstrate Ineffective Assistance of Counsel**

A defendant must meet a high standard to prevail on a claim for ineffective assistance of counsel.  A defendant making such a claim must first demonstrate his attorney's performance was deficient.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  To prove deficiency, a defendant must prove the errors committed by his lawyer were so serious that his attorney failed to function as "counsel" guaranteed by the Sixth Amendment.  Id.  Furthermore, a defendant must show that his attorney's deficient performance actually prejudiced his defense.  In so doing, a defendant must establish that he was deprived of a fair trial due to counsel's egregious errors. Id.

A court will consider a lawyer's performance effective if his performance appears reasonable under the prevailing professional norms.  Id. at 688.   Reasonableness is determined by examining a lawyer's performance and considering the information available to the attorney at the time of the trial.  Zettlemoyer v. Fulcomer, 923 F.2d 284, 296 (3d Cir. 1991).  It is not judged by "the distorted lense of hindsight."  Id.  The reviewing court should "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and should not second-guess decisions the lawyer made during the trial.  Strickland, 466 U.S. at 689.

In addition to setting forth the above mentioned requirements, the Supreme Court noted that:

> The representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

Blackledge v. Allison, 431 U.S. 63, 74 (1977). Thus, in order to overcome the presumption of verity, Petitioner must put forth specific and credible allegations that her statements in open court were the result of misunderstanding, duress, or misrepresentation. Leso. v. Lehman, 925 F.2d 1527, 1538 (3d Cir. 1991).

Here, Petitioner charges that her counsel failed to hold an evidentiary hearing, as per her request. (Pet. Br. at Attach. 2). Additionally, she charges that her counsel failed to pursue an evidentiary hearing to assess the credibility of the Government's evidence. (Id.) Petitioner's claims, however, fail to meet the standard set forth above. Even if counsel sought such evidentiary hearings, a federal court need not grant them if it is doubtful that the hearing would be meaningful or would advance the Petitioner's claim. Cambell v. Vaughn, 209 F.3d 280, 291 (3d Cir. 2000). Since Petitioner failed to "forecast any evidence beyond that already contained in the record," or explain how her cause would be promoted by an evidentiary hearing, the Court cannot presume that such a hearing would have effectuated a different outcome. Cf. id. at 287.

Petitioner further claims that her counsel failed to investigate, uncover readily available mitigating evidence, discover additional witnesses, or prepare for trial. (Pet. Br. at Attach. 2). However, counsel's decision not to investigate must be "directly assessed for reasonableness . . .

applying a heavy measure of deference to counsel's judgments." Strickland, 466 U.S. at 691. Moreover, the Petitioner must demonstrate that, but for counsel's failure to investigate, the result of the proceeding would have been different. Id. at 694. Here, Petitioner did not set forth any evidence that would satisfy this burden, failing to identify any mitigating evidence or helpful testimony from available witnesses.

Petitioner asserts that her counsel failed to produce facts which would have supported her allegations of Government misconduct. (Pet. Br. at Attach. 2). However, she does not set forth any facts that would have produced a different outcome in her case. Moreover, Petitioner's claim that her counsel failed to produce expert witness from the New Jersey Banking and Insurance Department, whom she alleges would have established that she could not have possibly committed the offenses charged, also is without merit. Id. She cannot prove that the Court would have permitted such testimony or that a jury would have found such testimony persuasive enough to warrant a different outcome. See State v. Martini, 160 N.J. 248, 306 (1999). Similarly, Petitioner's contention that counsel failed to produce a statement from an accountant who allegedly committed the offenses with which Petitioner was charged (Pet. Br. at Attach. 2), does not meet the standard of demonstrating ineffective counsel because there is no indication that the individual existed, would have been willing to testify without concern of self-incrimination, or of any evidence that would lead to the presumption that the jury would have found the witness credible.

Petitioner contends that her counsel was ineffective since he failed to produce a statement from Chris Woods which would have implicated him in all the HUD loans with which Petitioner

was charged. (Pet. Br. at Attach. 2). However, Petitioner cannot demonstrate that, despite Woods' involvement, she is free from all responsibility. If Woods' testimony included a claim of responsibility, it does not relieve Petitioner from guilt simply because Woods also committed the offenses. (Ans. at 17).

Petitioner asserts that her counsel failed to protect her Fifth, Sixth and Fourteenth Amendment Rights. (Pet. Br. at Attach. 2). However, she does not identify the manner in which these rights were violated. If her claims stem from an alleged failure to protect her rights during interrogation, the assertion is without merit because her guilty plea broke the causal chain between a violation of her constitutional rights and her conviction. See Tollett v. Henderson, 411 U.S. 258, 267 (1973).

**D. Petitioner Fails to Demonstrate Guilty Plea was not Made Voluntarily**

Petitioner's allegations contradict her sworn testimony made during sentencing. (Ans. Ex. D at 10-32). Under oath, Petitioner stated that she read, understood, and signed the Agreement "voluntarily." (Id. at 15-17). She testified that she had conferred with her attorney prior to signing the Agreement; when asked if there were any questions or concerns her attorney had not satisfactorily answered, Petitioner replied "no." (Id. at 16). Moreover, Petitioner stated that she was "satisfied" with her attorney's performance. (Id. at 16-17). Petitioner indicated that her plea was solely the product of her decision and not that of her attorney's. (Id.) She denied that her plea was the product of any verbal or physical threats and noted that her guilty plea was entered because she was, in fact, guilty. (Id. at 14, 29). Finally, the Prosecutor repeated the possible penalties in the Agreement; Petitioner stated that she was both aware these penalties

existed and that she understood the Court did not yet know which sentence he would receive for her guilty plea. (Id. at 18-19). Petitioner also stated that she and her attorney had discussed the possible sentences she could receive and that she fully understood the consequences of entering a guilty plea. (Id. at 19-22). Since Petitioner failed to present any evidence to rebut her sworn testimony, which retains a strong presumption of verity, she has not satisfied the burden establishing that her guilty plea was not made voluntarily. See Blackledge, 431 U.S. at 74.

### E. Petitioner Fails to Demonstrate that Her Conviction was the Result of an Involuntary Guilty Plea Induced by a Coerced Confession

Petitioner asserts that a law enforcement officer verbally threatened her in order to obtain a coerced confession. (Pet. Br. at Attach. 1). She states that this coerced confession led to her guilty plea. (Id.) Nevertheless, the Supreme Court has held that a competently counseled defendant who alleges that her guilty plea was induced by a coerced confession is not, without more, entitled to a hearing on a petition for habeas corpus. McMann v. Richardson, 397 U.S. 759, 789 (1970). Since we have found that her counsel was not ineffective, and Petitioner has not brought forth any evidence to rebut her sworn testimony[1], she cannot satisfy the required burden. Had Petitioner adequately demonstrated that her confession was coerced, a voluntary guilty plea would have broken the causal chain from the coerced confession to the final conviction. Tollett, 411 U.S. at 267. Accordingly, Petitioner's coerced confession ultimately did not lead to her conviction; rather, her guilty plea, testified in open court to be made voluntarily, led to her conviction. (See Ans. Ex. D at 14).

---

[1] In fact, Petitioner denied, in open court, to have been verbally threatened or induced in any way that led to her guilty plea. (Ans. Ex. D at 13-14).

**F.  Petitioner's Eligibility for Home Confinement and Miscalculation of Time Served is Dismissed as Moot**

The Court notes that, since Petitioner has served her ten-month term of imprisonment, her claims requesting home confinement and reduction of sentence due to a miscalculation of good time credit are dismissed as moot.

### III. CONCLUSION

For the reasons stated, Petitioner's request for habeas corpus relief pursuant to 28 U.S.C. § 2255 is hereby **denied**.

          S/ Dennis M. Cavanaugh
          Dennis M. Cavanaugh, U.S.D.J.

Date:        August 4, 2006
Original:    Clerk's Office
Cc:          All Counsel of Record
             File